**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHAN CRUMP,<br>M26608, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ADMINISTRATIVE REVIEW BOARD, | ) | |
| ANTHONY D. WILLS, | ) | |
| ASSISTANT WARDEN OF | ) | Case No. 24-cv-806-MAB |
| PROGRAMS, | ) | |
| GRIEVANCE OFFICE PERSONNEL, | ) | |
| D.J. MARTINEAU, | ) | |
| A.B. JONES, | ) | |
| SCHOENBECK, | ) | |
| S. GEE, | ) | |
| N. BIRHAM, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**BEATTY, Magistrate Judge:**

Plaintiff Shan Crump, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  Plaintiff alleges that his rights were violated in relation to disciplinary proceedings, which led to a one-year term of segregation.  Plaintiff's Second Amended Complaint (Doc. 16) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE SECOND AMENDED COMPLAINT

On October 23, 2023, Plaintiff's cell in the East cellhouse was shaken down. Defendant Martineau searched his cell outside of his presence, at which time he "allegedly" found a five-inch sharpened piece of metal with a plastic handle in a laundry sack on the floor.  (Doc. 16 at 3).  Martineau did not report any distinguishing features on the bag that would have attributed ownership to Plaintiff or his cellmate, nor did he report that there were any witnesses to his discovery.  Plaintiff and his cellmate were escorted to restrictive housing after the shakedown, and later the same evening they both received disciplinary tickets for dangerous contraband.  (*Id.* at 3-4).

Plaintiff alleges that he immediately noticed the disciplinary report was not completed in accordance with internal administrative directives.  The report was not fully filled out and it did not reflect that a reviewing officer forwarded it to a hearing investigator.  (*Id.* at 4).  Plaintiff alleges Defendant Martineau did not properly include a shakedown slip attesting what he found in Plaintiff's cell, Defendant Major N. Birham (the shift commander) did not properly require Martineau to supply the shakedown slip,

and Defendant Major S. Gee (the reviewing officer) did not properly forward a copy of this major disciplinary report to the hearing investigator.  Plaintiff alleges these failures have become an acceptable policy violation or practice at Menard, and that these issues violate administrative directives.  (Doc. 1 at 4).

Plaintiff alleges that the night of these events, he immediately filed a grievance, but it was not "docketed" until November 1, 2023.  (Doc. 16 at 5).

Meanwhile, on October 25, 2023, Plaintiff went before the Adjustment Committee for a hearing on the disciplinary report.  At the hearing he and his cellmate both pled not guilty, and he pointed out the procedural flaws with the report.  The Adjustment Committee found him guilty and sentenced him to a year in punitive segregation and three months of C-grade.  (*Id.* at 5).  He contends that they must have found him guilty based on his past record, because there were no identifying markers on the laundry bag that contained the weapon, and he and his former cellmate both denied ownership of the item.  He claims despite he and his cellmate both denouncing ownership of the weapon, his cellmate was found not guilty, while he was found guilty.  He alleges that this demonstrates he was denied due process and was penalized with atypical hardship. (Doc. 16 at 5).

The day after the hearing, Plaintiff received a "corrected" copy with the hearing investigator's signature.  (Doc. 16 at 5).  He claims the signature was dated October 24, 2023, the day after the incident.  Plaintiff claims that this creates yet another procedural problem because it violates a timeline (though he does not identify what timeline that is), and thus is another reason his disciplinary proceedings were invalid.  (*Id.*).

Plaintiff then alleges that Defendants Wills, the John/Jane Doe grievance officers, Defendant Mulholland, and the assistant warden of programs all violated his rights by the outcome of the grievance process.  He claims Wills and the Assistant Warden were both notified by written letters through interdepartmental mail of the issues with his disciplinary proceedings before they had to "render a decision against his personnels actions," and yet they nevertheless concurred with the actions of other personnel.  (Doc. 16 at 6).  He further alleges that the Assistant Warden of Programs took no action upon the personnel under his direct purview in the grievance or clinical services offices.  He adds that the "Illinois Administrative Review Board" compounded the problem by concurring with the grievance despite mounting evidence that the disciplinary proceedings were flawed.  (Doc. 16 at 6).

Plaintiff argues that the grievance results are further rendered absurd because they substantively address a different disciplinary ticket than the October 23, 2023, ticket that he was trying to challenge via the grievance.  (Doc. 16 at 6).  He claims Defendant Mulholland referenced a ticket from August 27, 2022, instead of properly referencing his October 23, 2023, ticket.  (Doc. 16 at 7).  He claims the grievance response also contains an incorrect identification number for him, and substantively focuses on the wrong incident of discipline.  As such, he argues the grievance and disciplinary proceedings are fatally flawed and the flaws cannot now be cured.  (*Id.*).

Plaintiff then explains the aspects of his term of punitive segregation that he alleges have been atypical and harsher than general population.  Issues include:

4

> Conditions of confinement violations; mental/physical trauma; Eighth Amendment violations of cruel and unusual punishment; denial of medical/mental healthcare; exposure unto uncontrolled chaos; floodings, fires, incessant levels of noise; smoke inhalation, exposure unto bio-hazardous wastes, denial of adequate cleaning supplies, i.e. causifics/toxics; safety and sanitation violations; retaliatory action; denial of yard access, denial of showers, denial of barbershop, denial of meaningful law library access; plumbing and water works violations; limited personal property violations; audio visual denial; denial of sick call procedures; limited unto no phone access; denial of visitations; denial of intervention to these delays, deviations and denials of all aforestated by/of in house supervisory personnel and ultimately the C.A.O of Menard Correction Center.  In general population most if not all of these delays and deprivations and outright denials of aforestipulated paragraph 33 this document are more expediently addressed."

(Doc. 16 at 7).  At the end of the pleading, Plaintiff alleges that he did not go into great detail about each of the identified issues out of respect for "judicial economy," but he contends he can provide more detailed examples if necessary.  (Doc. 16 at 14-15).  Plaintiff contends all defendants were "more than aware" of the conditions he faced in punitive segregation, thus they knowingly colluded and retaliated against him by keeping him housed there despite the flaws in his disciplinary proceedings.  (Doc. 16 at 8).

Plaintiff then launches into a lengthy discussion of overarching issues that he believes contribute to the problems in segregation, and in the prison environment.  He attacks "perennial staff shortages," as a major driver of deprivations, and contends that there is no legitimate budgetary or staffing excuse for the lack of trained staff to perform prison functions like healthcare and recreation, and anything that requires removing inmates from their cells.  (Doc. 16 at 8-10).  He suggests that the problems amount to a fraud on the taxpayers and demonstrate collusion by IDOC and Wexford officials.  (*Id*.).

To highlight issues, Plaintiff alleges that on June 7, 2024, there was massive flooding and a fire in his gallery. The water was inches deep and contained human waste. The air was thick with smoke, causing him to cough and vomit. Staff that responded to the incident extinguished fires, but then purposefully turned off fans on the gallery and told the inmates they'd have to deal with the aftermath of the fire and flood themselves. (Doc. 16 at 11). Plaintiff claims there are departmental rules about the handling of floods and bio-hazardous waste, but the procedures were not followed, and inmates were not issued stronger cleaning supplies than those available via commissary. Inmates were also denied medical treatment for smoke inhalation. (*Id.*).

He further complains medical and mental health needs are often not addressed, or appointments are cancelled, and inmates are told to reschedule. Rescheduling can delay care by up to six to eight weeks. (Doc. 16 at 12). Plaintiff also claims despite being in segregation for nearly a year, he can count the times he has been afforded recreation on his hands. The lack of recreation has resulted in serious physical deterioration because the cells are too small to perform even the most modest exercise. (Doc. 16 at 12-13). Plaintiff has requested medical care for his deteriorating physical condition repeatedly, but security and medical personnel refuse to address his needs. (Doc. 16 at 13). He claims he has lodged requests with the healthcare unit administrator, the local Wexford director, the director of nursing, and the Defendant Assistant Warden of Programs to no avail. He has also been denied mental health care because he is not on the severely mentally ill (SMI) caseload. (*Id.*).

He adds in passing that law library access is slow and is hindered by the perennial staff shortages. (Doc. 16 at 14). At the end of the Complaint, Plaintiff asserts that he has done everything he can to exhaust his administrative remedies. (Doc. 16 at 15).

He seeks a declaratory judgment, an injunction directing his immediate release from segregation and expungement of his related disciplinary conviction, and monetary compensation.

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **Fourteenth Amendment due process claim against Defendants Martineau, Birham, and Gee for their roles in preparing the initially faulty disciplinary ticket on October 23, 2023;**
>
> **Claim 2:** **Fourteenth Amendment due process claim against Defendants A.B. Jones and J. Schoenbeck for their handling of Plaintiff's disciplinary ticket at the hearing on October 25, 2023;**
>
> **Claim 3:** **Eighth or Fourteenth Amendment claim against Defendants Wills, Mulholland, John/Jane Doe grievance personnel, the Assistant Warden of Programs, and the ARB personnel for their roles in reviewing Plaintiff's grievance about his discipline.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

PRELIMINARY DISMISSALS

Plaintiff named the Illinois Department of Corrections as a Defendant and discussed the Department in broad sweeping terms in connection with issues such as the "perennial" staff shortages at Menard, and the impact on inmates in segregation. Regardless of the potential substantive merit of these allegations, Plaintiff cannot proceed against IDOC because it is not a "person" subject to suit under § 1983. *See e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012) (the state and state agencies are not suable "persons" within the meaning of § 1983). Plaintiff makes similarly broad mention of Wexford Health Sources, the corporate medical contractor for IDOC. Although Wexford, unlike IDOC, can be subject to suit under § 1983, Plaintiff did not name the entity as a defendant, so no such claim will proceed.

Plaintiff also mentions things like physical deterioration from the lack of recreation, and chronic back pain. Though issues such as these could amount to a claim under the Eighth Amendment based on the conditions of confinement or a serious medical need, Plaintiff has not linked these factual allegations to any defendant, so no claim is enumerated above about these issues. Instead, the Court read these allegations as context for Plaintiff's assertion that the conditions of his segregation stay have been atypical and harsh.

DISCUSSION

Plaintiff's allegations in Claim 1 against Defendants Martineau, Birham, and Gee are insufficient to proceed because at most he alleges that these three failed to follow prison procedures in the preparation of his initial disciplinary report. The failure to

follow internal prison procedures, or even state statutes or rules is insufficient to state a claim under § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, or prison regulations or policies).  Plaintiff's allegations against Martineau, Birham, and Gee all relate to their adherence to the prison's administrative directives, so the allegations are insufficient to state a claim under § 1983.  Thus, Claim 1 will be dismissed without prejudice.

In Claim 2, Plaintiff faults the members of the October 25, 2023, Adjustment Committee for violating his right to due process by basing their decision on his past disciplinary record instead of any available evidence relevant to the ticket.  To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient.  *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019).  Six months in segregation and six months' loss or restriction of privileges—do not, without more, implicate a protected liberty interest.  *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade).  However, greater terms of segregation, such as 240-days to a year may automatically invoke a due process inquiry regardless of the conditions.  *See e.g., Marion v. Columbia Corr. Inst.*, 599 F.3d 693, 698-99 (7th Cir. 2009) (finding that an inmate stated a due process claim at the pleading stages based upon a 240-day term of

segregation regardless of the severity of the conditions).  A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest.  *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Here, Plaintiff was penalized with a one-year term of segregation, of which he has now served approximately 11 months.  The duration of his term of segregation alone is sufficient to invoke a due process inquiry where he argues that the disciplinary findings were not supported by the evidence.  He also plausibly alleges that the conditions in segregation are atypical and harsh and have included exposure to bio-hazardous waste, the repeated denial of medical and mental health care for back pain, smoke inhalation, and other issues, the almost total lack of recreation, and more.  In the factual allegations, Plaintiff generically refers to the "adjustment committee" (Doc. 16 at 5), but in the listing of parties, he more specifically alleged that the committee for his October 25, 2023, hearing was Defendants Schoenbeck and A.B. Jones.  Though the Court generally requires the defendants to be named personally within the factual allegations, this is Plaintiff's third attempt to remedy issues with his complaint and it can readily be understood that he is referring to ARB members Schoenbeck and Jones.  Therefore, Claim 2 may proceed against Defendants Schoenbeck and Jones.

Finally, in Claim 3 Plaintiff faults Defendants John/Jane Doe Administrative Review Board (ARB) personnel, Warden Wills, the John Doe Assistant Warden of Programs, J. Mulholland, and the John/Jane Doe grievance personnel, for their handling of his grievance and correspondence about his disciplinary ticket.  As to the handling of the grievance itself, he indicates that the outcome was plainly flawed because he

10

submitted a grievance the day he was issued his disciplinary ticket, but the grievance response focused on an entirely different disciplinary ticket he had received in 2022. While this is understandably frustrating, and not responsive to what Plaintiff was trying to resolve, a mere error in grievance processing by those who did not otherwise participate in the underlying constitutional violation is insufficient to state a claim. *See, Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Thus, those mentioned solely for grievance processing—John/Jane Doe ARB personnel, John/Jane Doe grievance personnel, and J. Mulholland—cannot be held responsible under § 1983 on the facts alleged and Claim 3 is dismissed as insufficient against these defendants.

Plaintiff further alleges as to Defendants Wills and the Assistant Warden of Programs that he notified them in writing via the interdepartmental mailing system "way ahead of the time before he was supposed to render a decision against his personnels actions. Yet he concurred as always with the actions of personnel." (Doc. 16 at 6). It is not clear by these assertions if Wills and the unnamed Assistant Warden were alerted to errors with the handling of the grievance itself, or if they were alerted to problems with the disciplinary proceedings. Regardless, Plaintiff does not provide any information about what exactly was relayed to Wills or the Assistant Warden in any written correspondence, or if he knows if or when they might have received his correspondence. Plaintiff further alleges that the unnamed Assistant Warden "admitted guilt by no 'action' either upon the personnel under his direct purview." (Doc. 16 at 6). This suggests

11

that he intends to hold the Assistant Warden liable on a theory of supervisory liability for those who report to him, rather than for his own personal actions.

The problem with the allegations against Defendants Wills and the Assistant Warden is that there is no supervisory liability under § 1983. *See e.g., Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (supervisory liability is not recognized under § 1983). Instead, under § 1983, individuals can only be held liable for their own misdeeds, and not simply because they supervise others at the prison. *See e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.") "Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) (internal citation omitted).

Plaintiff attempts to satisfy the personal involvement requirement by alleging he wrote to Wills and the Assistant Warden well before it was time for them to act upon the decisions rendered by their personnel. Sometimes, establishing that a supervisor turns a blind eye to a constitutional violation can be enough to state a claim. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (prisoners many detailed letters to a prison official that were systematically ignored could support a finding of deliberate indifference). But here, the Court finds Plaintiff's allegations in this respect too vague because he does not indicate if his letters were about the grievance, the disciplinary proceedings, or both. He does not indicate when he sent the letter(s), or if he had any

12

indication the letter(s) ever reached the intended recipient. *See e.g., Bitzer v. Hyatte,* 2022 WL 426580 at * 3-4 (N.D. Ind. Feb. 11, 2022) (collecting cases about correspondence to prison officials and finding that an inmate's description of the contents of his correspondence to a warden was too vague to establish personal involvement). On the facts alleged, the Court finds that Plaintiff has failed to make a sufficient showing of personal involvement by Defendants Wills or the Assistant Warden.

In conclusion, the Court finds Plaintiff's allegations insufficient to proceed on Claims 1 and 3, but sufficient to proceed on Claim 2 against Defendants A.B. Jones and Schoenbeck.

**DISPOSITION**

**IT IS HEREBY ORDERED THAT Claim 2** of the Second Amended Complaint (Doc. 16) survives against Defendants Schoenbeck and A.B. Jones, and the Clerk is directed to serve these parties. By contrast, **Claims 1** and **3** are insufficient to state a claim. Plaintiff has failed to state any claim against Defendants IDOC, the Administrative Review Board, Anthony D. Wills, the Assistant Warden of Programs, Grievance Office Personnel, D.J. Martineau, S. Gee, or N. Birham, and the Clerk is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants A.B. Jones and Schoenbeck: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 16), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later

14

than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA order in this case because it may involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: October 7, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

15

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.


The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.